SMITH, J.   While the rendition of service of some value by the claimant to the decedent is shown, that such service was rendered under an agreement to pay therefor is not, in my judgment, clearly proven.   The only testimony of the decedent's promise to pay is that of the claimant's husband, who was the son of the decedent.   The promise as testified to by him is not clear or definite. The claimant and her husband left the decedent about six months before her death.   During the six years while they were on the farm, however, there must have been numerous settlements between the deceased and the claimant's husband, and not once during all that time, or until her death, was any claim made for any extra services rendered.   While the claimant was at the house of the deceased she gave birth to four children.   The sole care which she received during those times was rendered by the decedent.   In this class of cases, where claims are made against an estate which were not presented in the lifetime of decedent, the courts seem to require clear proof, from disinterested witnesses, that the services were accepted with an intent to pay therefor.   This requirement of the law claimant has failed to satisfy.   The inference seems clear that the assistance given both by the claimant to the deceased and by the deceased to the claimant was not in the nature of service under a contract of employment, but was such assistance as would naturally be given by those recognizing the obligations of relationship and the promptings of affection, for which no other compensation would be expected than such as might be voluntarily offered.   That the assistance here rendered was of this nature would seem to be indicated by the fact that no claim was made therefor until after the provisions of decedent's will had been made known.   The judgment should therefore be reversed.

Judgment reversed on the law and the facts, and referee discharged, and a new trial granted, with costs to appellant to abide the event.   All concur.

## LEFFMANN v. LONG ISLAND RY. CO.

(Supreme Court, Special Term, Kings County.   May, 1905.)

1. STREET RAILROADS—PRESCRIPTION—USER OF STREET—EFFECT.
    Where a prescriptive right was acquired to use a portion of a street for a steam railroad, such right did not justify a structure above the surface for use in the operation of an elevated railroad.

2. SAME—TAKING PRIVATE PROPERTY—CONSTITUTIONAL LAW.
    Where a corporation had acquired a prescriptive right to the use of a portion of a street for the operation of a steam railroad thereupon, Laws 1897, p. 763, c. 499, Laws 1901, p. 790, c. 297, and Laws 1902, p. 1094, c. 452, directing the erection at the joint expense of the corporation and the city of an elevated railroad to be used in lieu of the surface without making provision for compensating owners of private property for damage caused thereby, did not prevent them from obtaining relief by way of damages or by injunctions for an invasion of the easements of light, air, and access.

Suit by Ella H. Leffmann against the Long Island Railway Company.   Judgment for plaintiff.

Suit to restrain the defendant from maintaining ·and using an elevated . railroad structure 30 feet wide in the middle of Atlantic avenue, Brooklyn, in front of the plaintiff's land and building at the southeast corner of Atlantic and Ralph avenues, being about 45 feet on Ralph avenue and 232 feet on Atlantic avenue.

The structure is first of solid masonry, 30 feet wide and running from 4 feet to 10 feet 6 inches in height from the east end of plaintiff's property west to a point 80 feet east of Ralph avenue; and from thence west to Ralph avenue and beyond it is a steel structure of columns and longitudinal and transverse girders, the height along the plaintiff's property running from 10 feet 6 inches at the said end of the stone structure to 19 feet at the east line of Ralph avenue.

Many steam passenger and freight trains are run over the said structure day and night.

Alfred E. Sander and Charles S. Taber, for plaintiff.

Joseph F. Keany and James W. Treadwell, for defendant.

GAYNOR, J. The defendant has a prescriptive right to use a strip 30 feet wide through the center of Atlantic avenue on the surface for a double track steam railroad, acquired by long user. A prescriptive right is measured by the user, and the user here was on the surface only. It therefore does not justify a structure above the surface.

The structure complained of, however, was erected by the defendant and the city of New York at joint expense by legislative direction (chapter 499, p. 763, Laws 1897; chapter 297, p. 790, Laws 1901; chapter 452, p. 1094, Laws 1902), to be used by the defendant in lieu of the surface for its railroad; and from this it is argued that any direct injury done thereby to the plaintiff's abutting property is damnum absque injuria.

I have recently considered this question in Sadlier v. City of New York, 40 Misc. Rep. 78, 81 N. Y. Supp. 308, and do not need to add anything here. The notion that your property could be taken or directly injured by express legislative direction, any more than by the executive or judicial branches of government, without your being entitled to obtain redress therefor in court by way of damages or injunction or both, which had grown to such large proportions in this state, has finally been dispelled by the decision of the Supreme Court of the United States in the case of Muhlker v. N. Y. & H. R. Co. (April 10, 1905) 25 Sup. Ct. 522, 49 L. Ed. ——.

The common law allows no damages for what we call "consequential" injuries, and therefore as no statute is necessary to exempt from such damages, it is idle and meaningless to talk of a statute as affecting, or being necessary to affect, that result. And as a "direct" injury to property is a "taking" of property within the constitutional meaning of that word, it is just as idle to talk of a statute exempting from damages for such an injury. No statute can do it. Both the federal and state constitutional prohibitions against taking private property for public use without compensation stand in the way.

Though the statutes in question direct the work to be done, their meaning was and is that the defendant should make com-

pensation for any private property taken or directly injured in doing it, to be fixed by agreement or else by condemnation proceedings. They are not unconstitutional for not providing that compensation be paid. The defendant and the city of New York already had the power of acquiring private property by condemnation proceedings, and it was not necessary to confer it on them again.

An injunction must therefore issue; but the defendant may avoid it by paying the plaintiff the sum of $1,200, which I find to be her fee damage for injuries to her easements of light, air and access.

Judgment accordingly.